106 F.3d 408
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John E. MEIER, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 95-36296.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 10, 1996.*
Decided Jan. 15, 1997.
 
 Before: NOONAN, THOMPSON and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 John E. Meier appeals from the district court's judgment in the amount of $173,793.00 plus costs and interest, and from the district court's denial of his motion for reconsideration. Meier contends the district court erred by (1) failing to make specific findings with regard to his head injury; (2) finding that his second surgery on December 19, 1994 was not related to the accident of September 3, 1992; (3) finding that any injury to his right knee was not related to the accident; (4) finding the amount of his economic loss to be $108,543.00; and (5) finding the amount of damages attributable to his pain and suffering to be $35,000.00. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
 
 
 3
 All of the issues Meier raises in this appeal involve challenges to the district court's findings.[1] We review these findings for clear error. Resner v. Arctic Ocean Fisheries, 83 F.3d 271, 273 (9th Cir.1996). "We reverse only if we are left with a definite and firm conviction that a mistake has been committed." Id.
 
 
 4
 Although the district court did not make detailed evidentiary findings regarding Meier's head injury or resultant damages, it did find he "was struck on the right side of the head and other places, causing injury to his neck, lacerations of his right leg, bruises and other problems." In addition, the district court made extensive findings regarding Meier's past head injuries and lifelong history of chronic headaches. These findings included the following: Age 12, fracture, concussions and headaches; age 18-19, rendered unconscious during mortar attack; age 20-21, hospitalized for headaches, and ultimately given a 10% medical disability for his feet and nervous tension headaches; and, at age 25, knocked unconscious by another seaman, resulting in headaches.
 
 
 5
 The district court's findings with regard to Meier's head injury are sufficient to support its ultimate conclusion that his head injury was not caused by the accident. See Carr v. Yokohama Specie Bank, Limited, 200 F.2d 251, 255 (9th Cir.1952) (district court not required "to make findings on all facts presented or to make detailed evidentiary findings; if the findings are sufficient to support the ultimate conclusion of the court they are sufficient.").
 
 
 6
 With regard to Meier's second surgery on December 19, 1994, the evidence was conflicting. Some evidence indicated the surgery was caused by the accident. Other evidence indicated the surgery was caused by a preexisting disc disease.
 
 
 7
 Supporting Meier's contention that the accident caused the second surgery, the evidence showed that in addition to the herniations at the C5-6--C6-7 levels, the space between the C4-5 discs was bulging three weeks after the accident and that this might have been a beginning herniation which was caused by the accident. Dr. Nabavi testified that the reason this bulging disc was not operated on at the same time as the other two discs was because three-level fusions are not done. In addition, Meier states this disc was not operated on at that time because it was asymptomatic. Dr. Nabavi also testified that a fused disc typically puts stress on the discs above and below it, and frequently triggers herniation in these discs.
 
 
 8
 There was substantial evidence, however, that the second surgery was not required as a result of the accident. This evidence consisted of (1) an MRI report dated September 24, 1992, 21 days after the accident, which reported "degenerative disc disease at C4-5 on the right"; (2) a CT scan performed on October 8, 1992, one month after the accident, which also reported "[d]egenerative disc disease at C4-5"; (3) a cervical myelogram performed October 6, 1992, one month after the accident, which reported "cervical spondylosis at C5-6"; (4) a CT scan performed on October 21, 1992, one and one-half months after the accident, which reported "[s]evere degenerative disc disease at C4-5 ... with prominent bony ridges extending into the neural foramina."; and (5) testimony from Meier's own medical witness, Dr. Taus, that these were long-term conditions which would not develop in one to two months after an accident.
 
 
 9
 The foregoing evidence presented the district court with two permissible choices. The district court could choose to find that the second surgery was caused by the accident or that it was caused by Meier's preexisting disc disease. The court chose the latter. In making this choice, the court did not clearly err. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1984).
 
 
 10
 In support of his contention that the injury to his right knee was caused by the accident, Meier relies on the testimony and records of his treating physicians, Dr. Taus and Dr. Afzali, to the effect that he "more likely than not" injured his knee in the September 3, 1992 accident.
 
 
 11
 However, there is other evidence in the record which indicates that Meier reported injuring this same knee on August 3, 1992, a month before the accident. Dr. Taus testified that, when he saw Meier regarding his injuries received in the September 3, 1992 accident, Meier told him he had injured his knee before September 3, 1992. In addition, Meier told another treating physician, Dr. London, he was not sure if his knee injury was a result of the September 3, 1992 accident. In addition, while Meier suffered puncture wounds to his right mid-calf on September 3, 1992, there were no such apparent wounds to his knee.
 
 
 12
 Because there were two permissible views of the evidence regarding Meier's knee injury, the district court did not clearly err in finding this injury was not caused by the accident.
 
 
 13
 In reviewing the district court's finding that Meier's economic damages totaled $108,543, we give special deference to the district court's credibility findings. Exxon Co. v. Sofec, Inc., 54 F.3d 570, 576 (9th Cir.1995), aff'd --- U.S. ----, 116 S.Ct. 1810 (1996).
 
 
 14
 Although there were differences in the methods the parties' experts used to compute Meier's economic damages, both sides' experts testimony was coherently and facially plausible. For example, the government's economist used Department of Labor Worklife Tables to determine that Meier had 14 years of remaining worklife, while Meier's expert assumed Meier would work until he was 65, which gave him 19 years of remaining worklife. The government's expert calculated Meier's wage loss by averaging his past ten-year salary history, while Meier's economist projected his wage loss based on his highest earnings.
 
 
 15
 The district court determined the government's expert was more credible and chose to accept his computation of Meier's economic loss. This finding is not clearly erroneous.
 
 
 16
 Nor did the district court clearly err in finding $35,000 to be the dollar amount to compensate Meier for his pain and suffering. Measuring pain and suffering in dollars is inescapably subjective; "[i]t is not our function to second guess the trier of fact who heard the plaintiff himself speak of his suffering." Tanno v. S.S. President Madison, 830 F.2d 991, 992 (9th Cir.1987). We will not disturb an award of damages for pain and suffering unless it "either shocks the conscience or was motivated by the trial judge's passion or prejudice." Havens v. F/T Polar Mist, 996 F.2d 215, 219 (9th Cir.1993).
 
 
 17
 The district court found that Meier underwent a neck fusion of the C5, 6 and 7 discs as a result of the September 3, 1992 accident, that this surgery left him with permanent cervical disability, and disabled him from returning to sea or other heavy employment. These findings support an award of significant damages for pain and suffering. The district court determined the appropriate amount of these damages to be $35,000.00. That amount is not "so grossly and palpably inadequate as to shock the court's conscience." Korek v. United States, 734 F.2d 923, 929 (2nd Cir.1984).
 
 
 18
 We conclude that the district court did not clearly err by failing to make specific findings with regard to Meier's head injury, finding that his second surgery was not caused by the accident, finding that any injury to his right knee was not related to the accident, setting the amount of his economic loss at $108,543.00, and awarding $35,000.00 for pain and suffering. We affirm the district court's judgment and its order denying reconsideration.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In his reply brief, Meier argues for the first time that the government created bias by impermissibly characterizing him as litigious and by introducing inadmissible evidence. We do not consider these arguments because they were not raised in Meier's opening brief. Officers for Justice v. Civil Serv. Comm'n, 979 F.2d 721, 726 (9th Cir.1992)